UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT MULVANEY,

                    Plaintiff,            6:18-CV-06367 MAT
        v.                                DECISION and ORDER

CITY OF ROCHESTER and
LAURA C. MILLER,

                    Defendants.

## INTRODUCTION

Plaintiff Robert Mulvaney ("Plaintiff") brings this action against defendants City of Rochester (hereinafter, "the City") and Laura C. Miller ("Miller")  (collectively, the "Defendants"), alleging employment discrimination related to his age, pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), and disability, pursuant to the Americans with Disabilities Act of 1990 (ADA).  (Dkt. 8 at 2).  Plaintiff also alleges violations of the New York State Executive/Human Rights Law § 296 ("NY HRL"), the New York Civil Service Law, and breach of contract.  (Id.).

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that Plaintiff's allegations fail to state a claim upon which relief can be granted.  (Dkt. 10).  For the reasons set forth below, Defendants' motion to dismiss the complaint is granted in part and denied in part.  Plaintiff's hostile work environment

claims, as well as his ADA, ADEA, and whistleblower claims against defendant Miller, are hereby dismissed. Plaintiff's claims against the City under the ADA, ADEA, NY HRL.

## BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's first amended complaint (Docket No. 8).

At the time the first amended complaint was filed, Plaintiff had been employed by the City for more than twenty-six years. (Docket No. 8 at ¶ 15). He held various positions throughout his time there, including Construction Supply Handler, Building Maintenance Helper, Management Trainee, Municipal Assistant and, finally, in 2010, Parking Facility Manager. (*Id*. at ¶¶ 16-31). During his position as the Parking Facility Manager, Plaintiff underwent a triple fusion surgery in his back, which left him with certain limitations. (*Id*. at ¶¶ 41-42). Following his surgery, Plaintiff requested reasonable accommodations from his supervisor, defendant Miller, who denied his requests for help and instead gave him a "hard time" about his disability and need for accommodations. (*Id*. at ¶¶ 46-47).

On or about May 18, 2017, Plaintiff was informed that his position as Parking Facility Manager was going to be eliminated for the 2017-2018 budget year. (*Id*. at ¶ 48). Plaintiff was offered a temporary position as a Municipal Assistant, which was eight pay brackets below the Parking Facility Manager position, and a salary

reduction of $18,000 per year. (*Id.* at ¶ 49). Plaintiff was not considered for the new position as Supervisor of Structures and Equipment, which was a "reduced version" of the Parking Facility Manager position, with a higher pay grade than the position he was offered. (*Id.* at ¶¶ 50, 52). Plaintiff alleges that the individual who received the Supervisor of Structures and Equipment position was a "probationary City employee" who was younger than him and did not require reasonable accommodations because of a disability. (*Id.* at ¶ 53).

Plaintiff subsequently filed a charge with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") against Defendants. (*Id.* at ¶ 10). On February 26, 2018, the NYSDHR found probable cause to believe that Defendants engaged in or were in engaging in the unlawful discriminatory acts alleged by Plaintiff. (*Id.* at ¶ 12). The EEOC issued a Dismissal and Notice of Rights letter on August 14, 2018. (*Id.* at ¶ 14).

Plaintiff filed the instant action on May 16, 2018, alleging eleven separate causes of action, including violations of the ADEA for disparate treatment and a hostile work environment; violations of the ADA for disparate treatment and a hostile work environment; violations of the NY HRL for disparate treatment and a hostile work environment based on his age and disability; aiding and abetting as against defendant Miller; the New York State Civil Service Law

§ 75-b ("§ 75-b"); and breach of contract, as against the City. Docket No. 1. On August 23, 2018, Plaintiff filed his first amended complaint. Docket Nos. 5, 8. On September 7, 2018, Defendants filed a motion to dismiss the first amended complaint. Docket No. 10. Plaintiff responded on October 22, 2018. Docket No. 12.

## DISCUSSION

### I. Standard

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations and quotation marks omitted). Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the court "draw on its judicial experience and common sense." *Id.* at 679.

## II.     **Exhaustion of Plaintiff's NY HRL Claims**

Defendants first argue that Plaintiff's NY HRL claims must be dismissed because those claims were previously filed before the state agency, which issued a probable cause finding.  Docket 10-1 at 3.  Defendants cite to well-established precedent holding that when a plaintiff elects to pursue claims of discrimination through an administrative body, rather than in federal court, Section 297 acts as a jurisdictional bar to the claim.  *See Klaes v. Jamestown Bd. of Pub. Utilities*, No. 11-CV-606, 2013 WL 1337188, at *18 (W.D.N.Y. Mar. 29, 2013) ("Section 297 of the Executive Law, commonly known as the 'election of remedies' provision, requires a plaintiff to pursue his claim for relief under Section 296 in either a judicial forum or a 'local commission on human rights', but not both.").

In response, Plaintiff contends that because his NY HRL claims were dismissed for administrative convenience, he is not barred from bringing suit in federal court.  Docket No. 12-1 at 3. Plaintiff provides an affirmation stating that the NYSDHR issued a Notice and Final Order dismissing Plaintiff's NY HRL claims on June 14, 2018.  Docket No. 12 at 1.  A copy of the Notice and Final Order is attached as Exhibit A to the affirmation.[1]  *Id*. at 4-8.

---

[1] Although the Notice and Final Order is not attached to the first amended complaint, the proceedings before the NYSDHR, including the results of that proceeding, are discussed in the first amended complaint.  Docket No. 8 at ¶¶ 10, 12.  Accordingly, the Notice and Final Order is incorporated by reference into the first amended complaint. *See Done v. HSBC Bank USA*, No. 09-CV-4878(JFB)(ARL), 2010 WL 3824141, at *2 (E.D.N.Y. Sept. 23, 2010) ("In reviewing a motion to

There is an exception to the above-mentioned jurisdictional bar "when the local commission on human rights has dismissed the claim 'for administrative convenience.'" *Klaes*, 2013 WL 1337188, at *18. The Notice and Final Order submitted by Plaintiff provides that the action was dismissed for administrative convenience. Docket No. 12 at 4. Accordingly, Defendants' motion to dismiss Plaintiff's NY HRL claims on the ground that they are procedurally barred is denied as moot.

## III. <u>Plaintiff's Disparate Impact and Hostile Work Environment Claims</u>

### A. <u>Plaintiff's ADEA Claims</u>

The ADEA prohibits workplace discrimination on the basis of age. "In order to establish a disparate treatment claim under the ADEA, an employee must make a *prima facie* case of discrimination, *Auerbach v. Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104, 109 (2d Cir. 1998), by showing (1) that the employee is a member of the protected class, (2) that the employee is qualified for the position, (3) that the employee suffered adverse employment action, and (4) that the circumstances surrounding the action give rise to an inference of age discrimination." *Abrahamson v. Bd. of Educ. Of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 71 (2d Cir. 2004). "The same

---

dismiss, a court may consider, *inter alia*, (1) documents that are incorporated by reference into the complaint, and (2) documents that, even if not incorporated by reference, the defendant has notice of and that are 'integral' to the complaint.").

analysis applies to age discrimination claims brought pursuant to the New York Human Rights Law." *Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp.2d 224, 234 (E.D.N.Y. 2010).

Defendants contend that Plaintiff's age discrimination claims must be dismissed because Plaintiff's job was eliminated due to "budgetary imperatives," rather than age discrimination. Docket No. 10-1 at 4. In support of this contention, Defendants submit the twelve-page affidavit (Docket No. 10-3) of Thomas J. Miller, Principal Staff Assistant in the City of Rochester's Department of Human Resource Management, which states, among other things, that Plaintiff's Parking Facility Manager position was eliminated for the 2017-2018 fiscal year in order to close a $50.1 million budget gap, and that the Supervisor of Structures and Equipment position was not comparable to the Parking Facility Manager position. *See* Docket No. 10-3. Defendants also offer that a female employee who is eight years older than Plaintiff was placed in a comparable position after her layoff from the Parking Bureau, and defendant Miller is over the age of forty. Dkt. 10-1 at 4. Further, Defendants contend that Plaintiff failed to present any facts showing that he was performing his job duties satisfactorily, as he conceded that he had a "bad back" throughout his employment with the City. *Id.* Finally, Defendants contend that defendant Miller cannot be held personally liable under the ADEA. *Id*. at 7.

As an initial matter, the Court agrees that defendant Miller may not be held liable under the ADEA. *See Martin v. Chemical Bank,* 129 F.3d 114, 1997 WL 710359 (Table), at *3 (2d Cir. 1997) (unpublished opn.) (holding that "individual supervisors may not be held personally liable under the ADEA") (citations omitted). Accordingly, Plaintiff's ADEA claim as it pertains to defendant Miller is dismissed.

"There is no heightened pleading standard for employment discrimination cases." *Holmes v. Air Line Pilots Ass'n, Intern.,* 745 F. Supp. 2d 176, 194 (E.D.N.Y. 2010). Rather, "the complaint must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Id.* (internal quotations and citation omitted).

Plaintiff pleads the following facts in support of his ADEA claim, which are relevant to the above-described elements for stating a claim for age discrimination. As to the first element, Plaintiff contends that he was over the age of forty when the conduct alleged in the first amended complaint occurred, and therefore he was a member of a class protected by the ADEA. As to the second element, Plaintiff pleads that he was qualified for the Supervisor of Structures and Equipment position, as it was a "reduced version" of the Parking Facility Manager position he previously held. He states that he has a master's degree in Public Administration, which qualifies him for a wide variety of

managerial roles in the City, and that the Parking Facility Manager position was a higher grade, with more responsibility than, the Supervisor of Structures and Equipment position.

As to the third element, Plaintiff states that he faced an adverse employment action because he was demoted from his eliminated position and placed into a "temporary, junior administrator's position far inferior to his capabilities and experience," and the new position was eight grades below his prior position, resulting in an $18,000 pay cut.  Fourth, Plaintiff contends that the individual who received the Supervisor of Structures and Equipment position was a probationary City employee, who is younger than Plaintiff, in his late 20s, and physically fit, and defendant Miller wanted someone younger and physically fit to work for her.  *See* Docket No. 8 at ¶¶ 49, 52, 53, 85-90, 95, 100, 111, 142.  These allegations satisfy the minimal pleading standard for stating a claim for age-related discrimination.

Defendants' arguments for dismissal of Plaintiff's ADEA claims rely primarily on factual information contained in the affidavit (Docket No. 10-3) submitted by Thomas Miller, which constitutes evidence offered to contradict the allegations in Plaintiff's first amended complaint. This would be inappropriate for the Court to consider in support of a motion to dismiss. *Schonholz v. Long Island Jewish Med. Ctr.*, 858 F. Supp. 350, 352 (E.D.N.Y. 1994) ("[T]he court is not permitted to consider factual matters submitted outside of the complaint unless the parties are given notice that the motion to dismiss is being converted to a motion

for summary judgment under Rule 56 and are afforded an opportunity to submit additional affidavits.") (citing *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 38 (2d Cir. 1990); other citation omitted); *see also Oxman v. Downs*, 999 F. Supp.2d 404, 407 (E.D.N.Y. 2014) ("Generally, when a defendant attempts to counter a plaintiff's Complaint with its own factual allegations and exhibits, such allegations and exhibits are inappropriate for consideration by this Court at the motion to dismiss stage.") (citation omitted). Rather, "[i]n deciding a motion to dismiss under Rule 12(b)(6), a court must accept factual allegations as true and construe all reasonable inferences in the plaintiff's favor." *Ambac Assurance Corp. v. U.S. Bank Nat'l Assoc.*, 328 F. Supp.3d 141, 155 (S.D.N.Y. 2018) (citing *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. J.P. Morgan Chase Co.*, 533 F.3d 187, 196 (2d Cir. 2009)). Accordingly, the Court declines to consider Thomas Miller's affidavit at this time.

The Court further notes that Defendants' reliance on the burden-shifting framework articulated in the *McDonnell-Douglas* case, *see* Docket No. 10-1 at 3, is not applicable on a motion to dismiss. *See O'Toole v. Cnty. of Orange*, 255 F. Supp. 3d 433, 437 (S.D.N.Y. 2017) ("'[A] plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss.'") (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)); *see also* Docket No. 10-1 at 2 (defense assertion that "bare legal conclusions and factual claims which are flatly contradicted

by the record are not presumed to be true," is not the federal standard on a motion to dismiss). If Defendants desire to submit evidence showing that elimination of Plaintiff's position was not due to his age, they may do so at the summary judgment stage. Accordingly, Defendants' motion to dismiss Plaintiff's age discrimination claims brought pursuant to the ADEA is denied as to the City but granted as to Miller. With regard to Plaintiff's age discrimination claims brought pursuant to the NY HRL, the motion to dismiss is denied as to the City and Miller.

## B. Plaintiff's ADA Claims

"To establish a *prima facie* case of unlawful discrimination on the basis of disability under the Americans with Disabilities Act . . . a plaintiff must show that (1) the defendant is an employer subject to the ADA; (2) the plaintiff was disabled within the meaning of the ADA or perceived to be so by his employer; (3) the plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability." *Trane v. Northrup Grumman Corp.*, 94 F. Supp. 3d 367, 375-76 (E.D.N.Y. 2015) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 132 (2d Cir. 2008)), *aff'd*, 639 F. App'x 50 (2d Cir. 2015). "The Court reviews New York State Executive Law § 296 claims under the same standards as ADA claims." *Trane*, 94 F. Supp. 3d at 376.

Defendants argue that Plaintiff has failed to allege facts that the City had notice of Plaintiff's disability, that he was

able to effectively perform his job, or that he suffered an adverse employment action, because he was not subject to a hostile work environment. Docket No. 10-1 at 8. Defendants also contend that Plaintiff's ADA claim against defendant Miller must be dismissed. *Id*. at 11.

The Court agrees with Defendants that Plaintiff may not maintain an ADA claim against defendant Miller. *See Carrasquillo v. City of N.Y.*, 324 F. Supp.2d 428, 441 (S.D.N.Y. 2004) ("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities.").

The first amended complaint contains several allegations relevant to the requirements for alleging a claim for disability discrimination.[2] As to the second element, Plaintiff contends that he is disabled within the meaning of the ADA and NY HRL, because while working in the Parking Facility Manager position, he asked for reasonable accommodations, after he underwent a triple fusion surgery in his back. Following his back surgery, he was not able to carry or climb ladders. Moreover, Plaintiff's co-workers knew that he had a bad back, even prior to surgery because he had injured his back fifteen years earlier.

As to the third element, Plaintiff states that although his back surgery left him with certain limitations, Plaintiff was able to perform the essential functions of his position, or a similar position, with reasonable accommodation by the City. Plaintiff

---

[2]
Defendants do not appear to contest that the City of Rochester is an employer subject to the ADA.

requested reasonable accommodations from his superior, defendant Miller, which she refused and did not "engage in the interactive process" of determining a reasonable accommodation, as required by the ADA. Plaintiff was specifically denied assistance in November and December 2016, when two employees assisting him were reassigned to a different supervisor, and was denied certain accommodations, including an appropriate vehicle.

Finally, as to the fourth element, Plaintiff contends that on or about May 18, 2017, he was informed that his Parking Facility Manager position was going to be eliminated and was offered the position of temporary Municipal Assistant, which would result in a salary reduction of $18,000. Yet, another employee who did not require an accommodation for a disability was appointed Supervisor of Structures and Equipment, which was comparable to the Parking Facility Manager position, which Plaintiff had held. *See* Docket No. 8 at 41-43, 46-49, 53, 54, 56, 57, 60-62, 66-68. These allegations are sufficient to state a claim for discrimination based on disability and to place the City on notice of Plaintiff's claims.

As to Plaintiff's allegations of an adverse employment action, Plaintiff alleges that, as a result of his disability, he was demoted and received a significant decrease in salary. Both changes clearly qualify as adverse employment actions. *See* *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("Examples of materially adverse employment actions include termination of employment, *a demotion evidenced by a decrease in wage or salary*,

-13-

a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (internal quotations and citations omitted) (emphasis added).

Regarding whether Plaintiff has alleged that he is disabled within the meaning of the ADA, "[t]he ADA provides that '[t]he term "disability" means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Ingram v. Nassau Health Care Corp.*, No. 17-CV-05556(JMA)(SIL), 2019 WL 1332857, at *4 (E.D.N.Y. Mar. 25, 2019) (quoting 42 U.S.C. § 12102(1)). "A disability can be shown following one of [these] three definitions." *Schaefer v. State Ins. Fund*, 207 F.3d 139, 142 (2d Cir. 2000). "Th[is] definition of disability [is to be] construed in favor of broad coverage. . . . [M]ajor life activities include . . . performing manual tasks, . . . lifting, . . . and working, . . . and an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (internal quotations and citations omitted) (alterations in original).

As noted above, Plaintiff alleges that he has experienced back pain for over fifteen years, and in 2016 ultimately underwent a triple fusion surgery in his back. This surgery prevented him from

performing certain activities, such as lifting and climbing on a ladder, requiring an appropriate vehicle because of his limitations. Therefore, Plaintiff has alleged a long-term injury, which was serious enough to require surgery, and ultimately prevented him from certain forms of climbing and lifting. Taken as true, these allegations are sufficient for pleading a disability. *Dooley*, 636 F. App'x at 21 (holding that Plaintiff sufficiently alleged a disability under the ADA, where she suffered a fracture and damage to the ulnar and median nerve distributions, had limitations in lifting and repetitive motion, and her injury took her off of work for medical care and treatment); *D'Entremont v. Atlas Health Care Linen Servs., Co., LLC*, No. 1:12-CV-0060 (LEK/RFT), 2013 WL 998040, at *6-7 (N.D.N.Y. Mar. 13, 2013) (construed liberally, *pro se* Plaintiff's allegations that he had chronic back issues, was physically able to perform his job duties, his back problem was aggravated by heavy lifting, his employer was aware of his disability, and he was fired because he was disabled, was sufficient to state an ADA claim); *c.f. Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 269 (E.D.N.Y. 2015) ("For example, although it is clear Plaintiff underwent hernia surgery, he does not describe how the hernia surgery affected or limited him in any major life activity like lifting, standing, walking or working."). Accordingly, Defendants' motion to dismiss Plaintiff's disability discrimination claims under the ADA is denied as to the City and granted as to defendant Miller, and the motion to dismiss the

disability discrimination claims under the NY HRL is denied as to the City and defendant Miller.

### C. Plaintiff's Hostile Work Environment Claims

"Under . . . the ADEA, and NYSHRL, '[a] hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer.'" *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 514 (S.D.N.Y. 2016) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive. . . . In assessing the totality of the circumstances, a court might consider factors including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. As a general rule, to constitute a hostile work environment, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Lebowitz v. N.Y.C. Dep't of Educ.*, No. 15-cv-2890, 15-cv-5548 (LDH)(ST), 2017 WL

1232472, at *14 (E.D.N.Y. Mar. 31, 2017) (internal quotations and citations omitted).

The Second Circuit has recently recognized that hostile work environment claims are actionable under the ADA. *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019). Specifically, the Court instructed that "[a] plaintiff alleging a hostile work environment claim under the ADA . . . must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id*. (internal quotations and citations omitted).

Defendants argue that Plaintiff's hostile work environment claims must be dismissed because the conduct alleged by Plaintiff does not rise to the level of a hostile work environment. Docket No. 10-1 at 9-11. Plaintiff pleads the following facts in support of his hostile work environment claims: (1) defendant Miller refused Plaintiff's requests for help, and gave him "a hard time" about his disability and needing accommodation; (2) Plaintiff was initially denied a vehicle that would have been easier on his back, and "had to push to get a different car"; (3) defendant Miller re-assigned two employees who had assisted Plaintiff, which left him with no help; (4) defendant Miller asked Plaintiff a sarcastic question regarding his ability to change a light bulb; (5) defendant Miller continued to require and harass Plaintiff to do heavy lifting, which compromised his back; (6) defendant Miller asked Plaintiff hurtful questions, such as "why he couldn't change

a bulb, why he couldn't do this or that, or why he couldn't pick up a garden hose left on a parking garage floor by the City garage mechanics"; (7) defendant Miller asked Plaintiff to explain his medical situation in an email that included another co-worker, thereby revealing his disability; (8) Plaintiff was ostracized in the workplace, including being excluded from events (a mayor's visit, a comptroller audit, and Christmas party planning), and from staff lunches; (9) a co-worker made "comedic impersonations" of Plaintiff concerning his age and disability, and defendant Miller did not respond to his complaints. *See* Docket No. 8 at ¶¶ 54, 55, 58, 59, 62, 63, 66, 70-72, 76-81.

Even taking the allegations contained in the first amended complaint as true, the conduct alleged by Plaintiff is not sufficiently severe to constitute a hostile work environment. First, many of the allegations pertaining to Plaintiff's hostile work environment claim are very general, and lack the specificity needed to sustain a claim for a hostile work environment. *See Torres v. City of N.Y.*, No. 18 Civ. 3644(LGS), 2019 WL 1765223, at *4 (S.D.N.Y. Apr. 22, 2019) (dismissing hostile work environment claim where the complaint provided no details about the duration and frequency of discriminatory conduct, how it was tied to Plaintiff's membership in a protected class, who observed it, and noting that the allegations were "too vague to support a hostile work environment claim.").

Second, many of the actions alleged by Plaintiff in the first amended complaint - such as being excluded from meetings, asked

"hurtful questions" by Defendant Miller, and having to "push" for a new work car - simply are not severe enough to rise to the level of a hostile work environment. *See Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (holding that a plaintiff who was excluded from meetings, criticized, and sent rude e-mails did not have a hostile work environment claim); *Isbell v. City of N.Y.*, 316 F. Supp.3d 571, 591-92 (S.D.N.Y. 2018) (the plaintiff's allegations that the defendant, among other things, delayed the plaintiff's use of a DOC vehicle, harshly criticized the plaintiff's work, and used a harsh and sarcastic tone, failed to state a claim for a hostile work environment). Accordingly, Plaintiff's hostile work environment claims under the ADA, ADEA, and NY HRL are dismissed.

## IV.      Plaintiff's NY Civil Service Law § 75-b Claim (the "whistleblower claim")

"Section 75-b prohibits a public employer in New York State from taking adverse personnel action against a public employee in retaliation for the employee's disclosure of illegal activity." *Maher v. Town of Stony Point*, No. 16-CV-607(KMK), 2018 WL 4759786, at *10 (S.D.N.Y. Sept. 29, 2018). "To assert a claim under § 75-b, a plaintiff must allege: (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [ ]he reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel

action." *Id.* (internal quotations and citation omitted) (alteration in original).

Defendants contend that Plaintiff's whistleblower claim, brought pursuant to New York State Civil Service Law § 75-b, must be dismissed because (1) such a claim cannot be maintained against individual public employees, such as defendant Miller, and (2) Plaintiff has failed to identify complaints he made relating to unlawful government action, as opposed to merely reporting safety concerns or alleged nepotism. Docket No. 10-1 at 12-14.

The Court agrees that Plaintiff's Section 75-b claim cannot be maintained against defendant Miller. *See Verdi v. City of N.Y.*, 306 F. Supp.3d 532, 549 (S.D.N.Y. 2018) (due to how "public employer" is defined by the statute, "claims under [Section] 75-b cannot be maintained against individual public employees.") (internal quotations and citations omitted). Accordingly, Plaintiff's Section 75-b claim, insofar as it pertains to defendant Miller, is dismissed.

In support of his whistleblower claim, Plaintiff pleads that he "has consistently raised concerns to [defendant] Miller regarding the City's failure to comply with its own policies, in addition to various federal and state laws, *concerning public health and safety*." Docket No. 8 at ¶ 112 (emphasis added). The first amended complaint specifically identifies Plaintiff's complaints regarding contractors failing to perform in accordance with their service contracts with the city (*id.* at ¶¶ 113-114), reports he made regarding water leakage and fire suppression

systems (*id.* at ¶¶ 121-127), and a concern regarding the violation of a City policy addressing relationships to a contractor with an active financial interest in the City (*id.* at ¶ 117). Plaintiff also points to instances in which actual fires occurred in City parking facilities while he was serving as Parking Facility Manager and reporting fire safety concerns, thereby endangering public health or safety (*id.* at ¶¶ 125-126). Plaintiff alleges that as a result of these reports, which he continued to bring to the attention of his supervisors through spring 2017 (*id.* at ¶ 127), he was notified in May 2017 that his position would be eliminated (*id.* at ¶ 128). Accordingly, the first amended complaint contains allegations sufficiently detailed to state a claim for violation of NY Civil Service Law § 75-b.

As noted above, Defendants argue that Plaintiff fails to identify any specific laws or regulations that were violated by the City. Docket No. 10-1 at 12-13. However, Plaintiff has alleged that he "raised concerns . . . regarding the City's failure to comply with its own policies, in addition to various federal and state laws, concerning public health and safety." Docket No. 8 at ¶ 112. Regardless of whether the reports made by Plaintiff were violations of an actual law or regulation, Plaintiff may have "reasonably believed" the City's actions constituted improper government action, which is sufficient to state a claim for a violation of NY Civil Service Law § 75-b. *See Maher*, 2018 WL 4759786, at *11.

As to Defendants' contention that Plaintiff's reporting safety violations was a part of his duties as Parking Facility Manager rather than whistleblowing, that assertion is a factual matter and not appropriate for the Court to resolve on a motion to dismiss. Accordingly, Defendants' motion to dismiss Plaintiff's whistleblower claim against the City is denied but is granted as to defendant Miller.

## V.        **Plaintiff's Breach of Contract Claim**

"Under New York law, a breach of contract claim has four elements: '(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *First Technology Capital, Inc. v. Airborne, Inc.*, No. 6:15-CV-06063 EAW, 2019 WL 1995546, at *4 (W.D.N.Y. May 6, 2019) (quoting *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)).

Defendants argue that Plaintiff's breach of contract claim must be dismissed, because Plaintiff has not shown that he was qualified for the alternative positions he could have been offered, including Supervisor of Structures or Business Analyst I. Docket 10-1 at 15-16.

Plaintiff alleges that, in 2010, he and the City of Rochester entered into a "settlement agreement," under which he was placed into the Parking Facility Manager position. Docket No. 8 at ¶ 31. Pursuant to the settlement agreement, Plaintiff was provided with "retreat rights" to the position of Municipal Assistant, and it was further agreed that should a municipal assistant position not be available, the City would "use its best efforts" to find an

-22-

equivalent position for Plaintiff. *Id*. at ¶¶ 32-33; *see also id.* at ¶ 133 ("The Settlement Agreement requires a 'good faith effort' to find [Plaintiff] a comparable position to the Parking Facilities Manager position which the city abolished. . . ."). Plaintiff further alleges that following execution of the settlement agreement, he continued to perform the requirements of his position. *Id*. at ¶ 36. Upon learning that his position as Parking Facility Manager would be eliminated, the City offered Plaintiff the position of Temporary Municipal Assistant, rather than offering him the position of Supervisor of Structures and Equipment, which was a "reduced version" of the Parking Facility Manager position. *Id*. at ¶¶ 48-52. Plaintiff concludes that he was not offered the Supervisor of Structures and Equipment position "which is comparable to the Parking Facility Manager position, and for which [Plaintiff] is qualified based on his work history with the City." *Id*. at ¶ 135. Plaintiff alleges that the City's actions constituted a breach of the settlement agreement and caused damage to him, as it resulted in a significantly reduced salary. *Id*. at ¶¶ 49, 208-210, 215. Taking the allegations in the first amended complaint as true, Plaintiff has adequately pleaded a claim for breach of contract.

The City does not dispute that it failed to offer Plaintiff the Supervisor of Structures and Equipment position; rather, it argues that Plaintiff was not qualified for the position. Docket No. 10-1 at 15. The City's argument in this respect suffers from the same defect as does its argument that Plaintiff's ADEA and ADA

claims should be dismissed; that is, it is a factual one meant to counter the information contained in the first amended complaint regarding Plaintiff's qualifications for the Supervisor of Structures and Facilities position, and therefore is not appropriate for the Court to consider on a motion to dismiss.

As explained above, the first amended complaint contains allegations sufficient to make out a *prima facie* case for breach of contract. Further, Plaintiff alleges that he worked in many positions for the City (*id.* at ¶¶ 16-31); he holds a master's degree in public management (*id.* at ¶ 19), and the position of Supervisor of Structures and Equipment was a reduced version of the Parking Facility Manager position (*id.* at ¶ 52). In other words, the first amended complaint contains allegations sufficient to show that Plaintiff was qualified to perform the comparable position of Supervisor of Structures and Facilities, and the City denied him this position, in contravention of the settlement agreement. Accordingly, Defendants' motion to dismiss Plaintiff's breach of contract claim against the City is denied.

VI.         **Plaintiff's Aiding and Abetting Claim Under the NY HRL**

Defendants contend that Plaintiff's aiding and abetting claim should be dismissed because "[t]here is not accessory liability where substantive elements fail and no plausible showing of actionable conduct." Docket No. 10-1 at 14-15.

Plaintiff's aiding and abetting claim is based on defendant Miller's participation in the alleged discriminatory conduct taken against Plaintiff. Docket No. 8 at ¶ 196. As noted above, the

Court has found that, taking the allegations in the first amended complaint as true, Plaintiff has adequately pleaded claims for discrimination based on his disability and age. Accordingly, Defendants' argument to dismiss the aiding and abetting claim on this theory fails.

## VII. **Other Issues**

### A. **Vicarious Liability**

Defendants next argue that the City cannot be held liable for the acts of defendant Miller, because "defendant Miller did not have ultimate authority over layoffs, hiring, safety regulations or aspects of Civil Service Requirements impacting Plaintiff's employment." Docket No. 10-1 at 14. Defendants cite to *Magilton v. Tocco*, 379 F. Supp. 2d 495 (S.D.N.Y. 2005), and *Rucci v. Thoubboron*, 68 F. Supp. 2d 311 (S.D.N.Y. 1999), for the proposition that "[f]or municipal liability to attach to the decision of one policymaking official, it is not sufficient for this official to have discretion in the exercise of particular functions." (*Id.*). Defendant concludes that "all claims sounding in Title VII or 1983 should be dismissed." (*Id.*).

*Magilton* and *Rucci* address claims brought pursuant to 42 U.S.C. § 1983, including when municipal liability attaches in those cases. Here, neither the first amended complaint, nor Plaintiff's response papers, appear to allege claims pursuant to Section 1983. Accordingly, Defendants' argument is inapplicable to this case, and their motion to dismiss the claims against the City on this ground is denied.

**B.   Plaintiff's Alleged Retaliation Claims**

Defendants next contend that Plaintiff has failed to allege a *prima facie* case for retaliation under the ADEA or the ADA, because Plaintiff did not communicate his belief that he was being discriminated against to his supervisors.  Docket No. 10-1 at 15 (citations omitted).  In response, Plaintiff argues that a litigant is not required to plead a *prima face* case of retaliation or discrimination at the motion to dismiss stage. Docket No. 12-1 at 8 (citations omitted).

Plaintiff is correct that at the pleading stage, a litigant asserting a claim subject to the *McDonnell Douglas* burden-shifting standard is not required to plead facts sufficient to establish a *prima facie* case, and need only allege sufficient facts to give the defendant "fair notice of the basis for his claims." *Boykin v. KeyCorp.*, 521 F.3d 202, 212 (2d Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11, 514 (2002) (holding that a plaintiff asserting disparate treatment claims under Title VII and the ADEA need not allege "specific facts establishing a *prima facie* case of discrimination" to survive a motion to dismiss; the *McDonnell Douglas* burden-shifting framework "is an evidentiary standard, not a pleading requirement," and to require more than Fed. R. Civ. P. 8(a)'s "simplified notice pleading standard" would unjustifiedly impose a heightened pleading requirement on the plaintiff)). Nonetheless, "courts in this Circuit have noted that in evaluating a Rule 12(b)(6) motion, the court should still consider the elements of a *prima facie* case of retaliation in

making a determination of whether a plaintiff's complaint gives a defendant fair notice of the grounds of his claim." *Corbett v. Napolitano*, 897 F. Supp.2d 96, 111 (E.D.N.Y. 2012) (collecting cases).

The elements of a retaliation claim under the ADA are as follows: the plaintiff was engaged in protected activity; the alleged retaliator knew that he was involved in protected activity; an adverse decision or course of action was taken against him; and a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 148 (2d Cir. 2002) (citation omitted). "[S]eeking reasonable accommodation of [a plaintiff]'s disability constitutes protected activity under Section 504/ADA." *Id.* at 149 (citing *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999) (retaliation claim can be based on, *inter alia*, request for reasonable accommodation). Plaintiff's amended complaint contains allegations that while he was in the Parking Facility Manager position, he underwent back surgery; after that he repeatedly sought reasonable accommodations of his back disability from Miller, which were denied. Thus, he has alleged he has engaged in protected activity by seeking reasonable accommodations for his disability and that the City was aware of his attempts to obtain such accommodations. *See id.* With regard to the adverse action or course of conduct, Plaintiff alleges that his employment position was being eliminated; though he was offered an alternative position, the salary was $18,000 less. *See Feingold v. New York*, 366 F.3d 138,

152 (2d Cir. 2004) ("Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (quotation marks and quotations omitted; ellipsis in original). Finally, at this early stage of the proceeding, Plaintiff has adequately alleged a causal connection by alleging that two months after Miller subjected to discrimination and harassment based on his disability and refused his requests for accommodation, his job position was eliminated. Therefore, the Court finds that Plaintiff has plausibly alleged a retaliation claim under the ADA against the City.

The ADEA also prohibits retaliation for complaining of employment discrimination on the basis of age. *Kessler v. Westchester Cty. Dept. of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citation omitted). A *prima facie* case consists of the following elements: (1) the employee engaged in protected participation or opposition under the ADEA; (2) the employer was aware of this activity; (3) the employer took adverse action; and (4) a retaliatory motive played a part in the adverse action. *Id.* at 205-06 (quotation and citations omitted). With regard to his retaliation claim under the ADEA, the Court cannot discern any allegations in the amended complaint that Plaintiff engaged in protected activity of which the City was aware, such as by complaining about any discrimination based on his age. Therefore,

the Court finds that Plaintiff has not plausibly alleged a retaliation claim under the ADEA against the City.

Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim under the ADA is denied as to the City but granted as to Miller, and the motion to dismiss is granted as to the ADEA retaliation claim with regard to both Miller and the City.[3]

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion to dismiss (Docket No. 10) the first amended complaint, as follows:

Defendants' motion to dismiss the age discrimination claim under the ADEA against Miller is granted on the basis that individuals may not be held personally liable under the ADEA. Defendants' motion to dismiss the age discrimination claim under the ADEA against the City is denied.

Defendants' motion to dismiss the disability discrimination claim under the ADA against Miller is granted on the basis that individuals may not be held personally liable under the ADA. Defendants' motion to dismiss the disability discrimination claim under the ADA against the City of Rochester is denied.

Defendants' motion to dismiss the retaliation claim under the ADA is denied as to the City but granted as to Miller. The motion

---

[3] As noted above, individuals may not be held personally liable under the ADEA and ADA.

to dismiss the retaliation claim under the ADEA is granted as to both Miller and the City.

Defendants' motion to dismiss the hostile work environment claims under the ADA, ADEA, and NY HRL against the City and Miller is granted for failure to state a claim.

Defendants' motion to dismiss the age discrimination and disability discrimination claims under the NY HRL against Miller and the City is denied.

Defendants' motion to dismiss the "whistleblower claim" under NY Civil Service Law § 75-b is granted as to Miller because individuals may not be held personally liable under this statute. Defendants' motion to dismiss the "whistleblower claim" under NY Civil Service Law § 75-b is denied as to the City.

Defendants' motion to dismiss the breach of contract claim, asserted against the City only, is denied.

Defendants' motion to dismiss the aiding and abetting claim under NY HRL, asserted against Miller only, is denied.

Defendants' motion to dismiss the claims against the City for violations of Title VII and Section 1983 is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
        MICHAEL A. TELESCA
    United States District Judge


Dated:    Rochester, New York
          May 22, 2019